1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    STEVEN ANTHONY PRELLWITZ,

11          Petitioner,                No. CIV S-07-0046 JAM EFB P

12    vs.

13    D.K. SISTO, Warden,

14          Respondent.          FINDINGS AND RECOMMENDATIONS

15    _____/

16                    I.  INTRODUCTION

17          Petitioner Steven Prellwitz, a state prisoner proceeding without counsel, has filed a

18    petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He was convicted of two counts

19    of second degree murder in the Santa Clara County Superior Court.  He challenges a December

20    13, 2005 decision by the Board of Parole Hearings (hereinafter Board) finding him unsuitable for

21    parole.

22    ////

23    ////

24    ////

25    ////

26    ////

1

## II.  PROCEDURAL BACKGROUND

Following a December 13, 2005 parole suitability hearing, the Board concluded that petitioner would pose an unreasonable risk of danger to society or a threat to public safety if released from prison and thus that he was unsuitable for parole.  Dckt. No. 8, Attach. 3, at 75.[1] In support of its decision, the Board made findings that petitioner's crime was carried out in an especially cruel and callous manner, that he attacked, abused and mutilated multiple victims, that the offense demonstrated an exceptionally callous disregard for human suffering, and that the motive for the crime was inexplicable or very trivial.  *Id*.

Petitioner challenged the Board's decision in a petition for writ of habeas corpus filed in the Santa Clara Superior Court on May 2, 2006.  Dckt. No. 8, Attach. 5, at 6.  The Superior Court denied the petition on June 30, 2006, in the last reasoned state court decision applicable to these claims.  *Id*. at 2-4.  The Superior Court held:

> The habeas corpus petition of STEVEN A. PRELLWITZ is hereby denied.  While Petitioner is correct that the Board was not entirely thorough and accurate in its examination and consideration of his parole suitability, it appears that, on balance, sufficient evidence exists such that this Court is required to deny the petition. As stated by the Sixth District: "We will uphold the denial of parole when it appears that the Board would have reached the same conclusion based on the supported factors and those factors individually or collectively justify that conclusion."  (*In re DeLuna* (2005) 126 Cal.App. 4th 585, 598.)  The instant case presents such a situation.

> The most glaring error by the Board is its finding that "the motive for the crime was inexplicable or very trivial in relation to the offense as it involved a real estate deal."  This is a misconstruction of evidence.  The "real estate deal" was not the motive for the crime but rather was the proverbial final straw which, added to the years of dysfunctional interactions with his family, caused Petitioner to finally snap.  As noted by the Forensic Psychologist, "the origins of his life crime lie deep in the roots of this family's history" and "cumulative stress" was a central

---

[1]  Docket number 8 is Respondent's answer to the petition.  It has 6 exhibits, but respondent's electronic filing of those exhibits is separated into 7 attachments.  Thus, to avoid confusion, the court cites to the docket number, followed by the attachment number and then the page number of the attachment.

1    "causative factor" in this case.  For the Board to overlook this
     uncontroverted evidence was error.  As noted by the Court of
2    Appeal in the matter of George Scott: "under the regulations, the
     undisputed evidence [Petitioner] committed his offense while
3    under emotional stress should have been, but was not, considered
     in his favor."  (*In re Scott* (2004) 119 Cal.App.4th 871, 890.)
4    Petitioner's situation does not appear to be very distinguishable.

5           Another error of the Board's is its reliance on a subjective
     impression that Petitioner "need[ed] to do more time."  Both Board
6    members stated: "How much time is enough? We don't know."
     Pursuant to *In re Dannenberg* (2005) 34 Cal.4th 1061 the Board is
7    not supposed to consider proportionality (i.e. how much time an
     inmate has served) and instead must examine each case and inmate
8    individually to determine whether he is "presently unsuitable" and
     a "continuing danger." (Emphasis added.)  However in this case
9    the Board, to some extent, did not make its determination based on
     Petitioner's present dangerousness but instead based on an
10   impression that Petitioner needed more punishment.  This was
     error because the Judicial Branch sets the sentence, the Legislative
11   Branch, through the statutory provisions for custody credits,
     essentially sets the MEPD, and the Executive Branch's duty
12   thereafter is to determine, *without regard to punishment*, parole
     suitability based on the individual's current level of
13   dangerousness.  In the numerous habeas petitions this Court has
     seen the Attorney General consistently asserts that the amount of
14   time/punishment is not a proper consideration under the
     controlling regulations.  The Board should not have relied on this
15   factor in the instant case.

16          Despite the above errors, the Board appears to have
     thoughtfully approached this difficult case and the Board's partial
17   reliance on the prolonged nature of Petitioner's attacks along with
     the undeniable presence of unsuitability criteria § 2402, subd.(c)
18   (1)(A) Cal. Code Regs. title 15, (multiple victims were attacked,
     injured, or killed in the same or separate incidents) satisfies Due
19   Process.

20   *Id.*

21          Petitioner next challenged the Board's decision in a petition for writ of habeas corpus to

22   the California Court of Appeal for the First Appellate District, which was denied without

23   prejudice to refiling in the Sixth Appellate District. Dckt. 8, Attach. 6, at 70. The California

24   Court of Appeal for the Sixth District summarily denied petitioners re-filed petition on August

25   22, 2006.  Dckt. 8, Attach. 7, at 9.  The California Supreme Court denied a petition for review.

26   Dckt. No. 1 at 77.

                                          3

On January 8, 2007, petitioner filed his federal petition for writ of habeas corpus. Dckt. No. 1. On March 3, 2009, the then-assigned magistrate judge issued findings and recommendations recommending that the petition be granted as to petitioner's due process claim and that the Board of Parole Hearings be ordered to conduct a hearing in compliance with the recommendations within 90 days of any order adopting the findings and recommendations. Dckt. No. 19. On May 21, 2009, the findings and recommendations were adopted and the Board was ordered to conduct a new parole suitability hearing complying with recommendations given therein within 90 days. Dckt. No. 22. On September 21, 2009, respondent filed a notice of compliance with the Court's May 21, 2009 order, indicating that on September 9, 2009, the Board held a new parole suitability hearing consistent with the court's order and found petitioner unsuitable for parole. Dckt. No. 28.

In the meantime, respondent filed an interlocutory appeal to the United States Court of Appeals for the Ninth Circuit. Dckt. No. 23. On September 22, 2011, the Ninth Circuit dismissed the appeal for lack of appellate jurisdiction because this Court's order did not dispose of the action as to all claims and therefore was not final. Dckt. No. 29. The judgment took effect on October 14, 2011. Dckt. No. 30. Thus, the petition remains pending in this court. For the reasons that follow, it is recommended that the petition be denied and that final judgment be entered for respondent.

## III. GROUNDS FOR REVIEW

Petitioner presents seven grounds for relief, verbatim, as follows:

Ground 1:    The Board of Prison Terms (B.P.T.) presented <u>no</u> evidence to substantiate its findings that the Petitioner would pose an unreasonable risk of danger to society, or threat to public safety if released, thus violating the Petitioner's right to both State and Federal due process and equal protection.

Ground 2:    To state that the Petitioner's motive for the crime "is inexplicable or very trivial in relation to the offense" totally ignored both the Petitioner's injuries and years of stressful relations with the victims, pointed out in over ten years of Parole Board ordered psychological reports and it therefore is a violation of due process and equal protection.

4

| | | |
|---|---|---|
| Ground 3: | California Penal Code 3041 creates a liberty interest protected by the Federal due process and equal protection clauses which the Board of Prison Terms violated when it "shall normally" set a parole date one year prior to the inmate's minimum eligible parole release date. |
| Ground 4: | Pursuant to Re Monigold, the Petitioner is years beyond both his minimum and maximum parole release dates, violating the Petitioner's right to State and Federal due process and equal protection of the law, and deprives the Petitioner of liberty interest in receiving a parole date. |
| Ground 5: | It is a violation of State law and the Due Process and Equal Protection Clauses of the 14th Amendment for the B.P.T. to find unsuitability for parole supported by "some evidence" when the California Code of Regulation, Title 15, Section 2000(b)(48) mandates that parole decisions be supported by a "preponderance of the evidence." |
| Ground 6: | Continued and sole reliance on the unchanging factor of the commitment offense can lead to a violation of due process and the post-conviction history must take precedent, especially as the time of incarceration increases. |
| Ground 7: | The B.P.T. and the Governor of California have implemented an illegal policy of denying parole to the vast majority of suitable indeterminately sentenced inmates, thus violating the Administrative Procedures Act, California Penal Code Section 3041, and State and Federal rights to due process and equal protection. |

Petitioner's grounds for relief overlap and are somewhat repetitive. Liberally construed, his petition raises claims that the Board's 2005 decision finding him unsuitable for parole violated (A) the Due Process Clause; (B) Equal Protection; (C) the Eighth Amendment right to be free from cruel and unusual punishment; and (D) California state law. For the reasons that follow, these claims all fail.

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under the

1   AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in

2   state court proceedings unless the state court's adjudication of the claim:

3          (1) resulted in a decision that was contrary to, or involved an
           unreasonable application of, clearly established Federal law, as
4          determined by the Supreme Court of the United States; or

5          (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
6          State court proceeding.

7   28 U.S.C. § 2254(d); see also *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

8   *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

9          This court looks to the last reasoned state court decision to determine whether the law

10  applied to a particular claim by the state courts was contrary to the law set forth in the cases of

11  the United States Supreme Court or whether an unreasonable application of such law has

12  occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919.

13  The state court's factual findings are presumed correct if not rebutted with clear and convincing

14  evidence.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).  It is

15  the habeas corpus petitioner's burden to show the state court's decision was either contrary to or

16  an unreasonable application of federal law.  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

17                                    V.  DISCUSSION

18         A.     Due Process

19         The Due Process Clause of the Fourteenth Amendment prohibits state action that

20  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

21  due process violation must first demonstrate that he was deprived of a liberty or property interest

22  protected by the Due Process Clause and then show that the procedures attendant upon the

23  deprivation were not constitutionally sufficient.  *Kentucky Dep't of Corrections v. Thompson*,

24  490 U.S. 454, 459-60 (1989).  A protected liberty interest may arise from either the Due Process

25  Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'"

26  or from "an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*, 545

                                            6

1 U.S. 209, 221 (2005) (citations omitted); *see also Board of Pardons v. Allen*, 482 U.S. 369, 373

2 (1987).

3        The United States Constitution does not, in and of itself, create a protected liberty interest

4 in a parole date, even one that has already been set. *Jago v. Van Curen*, 454 U.S. 14, 17-21

5 (1981); *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (There is

6 "no constitutional or inherent right of a convicted person to be conditionally released before the

7 expiration of a valid sentence."); *see also Hayward v. Marshall*, 603 F.3d 546, 561 (9th Cir.

8 2010) (en banc). However, "a state's statutory scheme, if it uses mandatory language, 'creates a

9 presumption that parole release will be granted' when or unless certain designated findings are

10 made, and thereby gives rise to a constitutional liberty interest." *Greenholtz*, 442 U.S. at 12; *see*

11 *also Allen*, 482 U.S. at 376-78.

12        In California, a prisoner is entitled to release on parole unless there is "some evidence" of

13 his or her current dangerousness. *In re Lawrence*, 44 Cal.4th 1181, 1205-06, 1210 (2008); *In re*

14 *Rosenkrantz*, 29 Cal.4th 616, 651-53 (2002). California's parole scheme gives rise to a liberty

15 interest in parole protected by the federal due process clause. *McQuillion v. Duncan*, 306 F.3d

16 895, 902-03 (9th Cir. 2002); *Swarthout v. Cooke*, 131 S.Ct. 859, 861-62 (2011). The United

17 States Supreme Court has held, however, that correct application of California's 'some evidence'

18 standard is *not* required by the federal Due Process Clause. *Swarthout*, 131 S.Ct. at 861. Rather,

19 this court's review of due process is limited to the narrow question of whether the petitioner has

20 received adequate process for seeking parole. *Id*. at 863 ("Because the only federal right at issue

21 is procedural, the relevant inquiry is what process [petitioner] received, not whether the state

22 court decided the case correctly."). Adequate process is provided when the inmate is allowed a

23 meaningful opportunity to be heard and a statement of reasons why parole was denied. *Id*. At

24 862 (federal due process satisfied where petitioners were "allowed to speak at their parole

25 hearings and to context the evidence against them, and were afforded access to their records in

26 advance, and were notified as to the reasons why parole was denied"); *see also Greenholtz*, 442

7

1    U.S. at 16.

2          Here, the record reflects that petitioner was present and participated at his 2005 parole

3    suitability hearing, and that he was provided with the reasons for the Board's decision to deny

4    him parole.  As discussed, this is all the process that is due.  Accordingly, no relief is available

5    under the Due Process Clause.

6          B.      Equal Protection

7          Although petitioner repeatedly asserts violations of the Equal Protection Clause of the

8    Fourteenth Amendment, his contentions in this regard are vague and conclusory and should be

9    denied on that basis.  *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("It is well settled

10   that '[c]onclusory allegations which are not supported by a statement of specific facts do not

11   warrant habeas relief.'") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).  Petitioner fails

12   to demonstrate that he was treated differently from other similarly situated prisoners or that the

13   Board lacked a rational basis for its decision finding him unsuitable for parole following the

14   2005 parole suitability hearing at issue.  *See McGinnis v. Royster*, 410 U.S. 263, 269-70 (1973);

15   *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991).  Rather, the record reflects that

16   petitioner was treated equally to other indeterminate life term inmates seeking parole in that he

17   was afforded a hearing pursuant to state law where his individual circumstances were considered

18   in the Board's parole suitability determination.  Accordingly, no relief is available under the

19   Equal Protection Clause.

20         C.      Cruel and Unusual Punishment

21         Petitioner contends that the Board's denial of parole constitutes cruel and unusual

22   punishment.  A criminal sentence that is not proportionate to the crime of conviction may indeed

23   violate the proscription on cruel and unusual punishment in the Eighth Amendment.  Outside of

24   the capital punishment context, however, the Eighth Amendment "forbids only extreme

25   sentences that are grossly disproportionate to the crime." *United States v. Bland*, 961 F.2d 123,

26   129 (9th Cir. 1992) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J.,

8

1    concurring).  The gross disproportionality rule set forth by the Supreme Court in *Harmelin* is the

2    only clearly established law applicable to petitioner's Eighth Amendment challenges to the

3    Board's decision.  *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003).

4         Here, petitioner lacks a proper factual basis for relief under the Eighth Amendment.  He

5    was sentenced to a term of 18 years to life for two counts of murder in the second degree.  Dckt.

6    No. 1 at 5.  Such a sentence contemplates a potential life term in prison.  Petitioner will continue

7    to receive parole suitability hearings and will be released if he is found suitable for parole.

8    Parole is not mandatory, but merely a possibility.  While petitioner might have hoped or

9    expected to be released sooner, the Board's decision to deny him a parole release date has not

10   enhanced his punishment or sentence.  It is further noted that even a mandatory life sentence for

11   murder does not constitute cruel and unusual punishment.  *United States v. LaFleur*, 971 F.2d

12   200, 211 (9th Cir. 1991).  For these reasons, no relief is available under the Eighth Amendment.

13        D.      State Law Claims

14        Petitioner contends that the Board's denial of parole violated various provisions of state

15   law, including the Due Process Clause of the California Constitution, section 3041 of the

16   California Penal Code, the California Administrative Procedures Act, and California case law.

17        These claims are based solely on alleged violations of state law.  Claims that state law

18   was violated are not cognizable in a federal habeas corpus proceeding.  *See Rivera v. Illinois*,

19   556 U.S. 148, 158 (2009); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the

20   province of a federal habeas court to reexamine state-court determinations on state-law

21   questions").  No relief is available for petitioner's claims premised on alleged violations of state

22   law.

23   ////

24   ////

25   ////

26   ////

VI.  CONCLUSION

For the foregoing reasons, it is hereby RECOMMENDED that:

1.  The court's previous order of May, 21, 2009 be vacated; and

2.  The petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability shall issue in the even the files an appeal of the judgment of in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant"); *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc) (holding that prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED:  May 3, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE